# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS GARCIA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No. 1:17-cv-01732-SAB<br><br>ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS<br><br>(ECF Nos. 15, 18, 19) |

## I.

## INTRODUCTION

Jesus Garcia ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from diabetes, obesity, gout, chronic heart failure (i.e. mitral regurgitation), and pulmonary hypertension. For the reasons set forth below, Plaintiff's Social Security appeal shall be granted.

/ / /

/ / /

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 7, 8.)

1

# II.

# FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on April 24, 2007. (AR 82.) An administrative law judge found Plaintiff not to be disabled on April 10, 2009. (AR 79-87.) Plaintiff's request for a hearing was dismissed on August 28, 2012, due to his failure to appear. (AR 89-93.)

Plaintiff protectively filed an application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on March 7, 2013. (AR 112, 113.) Plaintiff's applications were initially denied on August 2, 2013, and denied upon reconsideration on March 14, 2014. (AR 136-140, 144-148.) Plaintiff requested and received a hearing before Administrative Law Judge Guy E. Fletcher ("the ALJ"). Plaintiff appeared for a hearing on May 16, 2016. (AR 33-61.) On September 12, 2016, the ALJ found that Plaintiff was not disabled. (AR 15-28.) The Appeals Council denied Plaintiff's request for review on October 27, 2017. (AR 1-4.)

**A.   Hearing Testimony**

Plaintiff testified at the May 16, 2016 hearing and was represented by counsel. (AR 37.) At the hearing, Plaintiff's counsel amended the alleged onset date to May 7, 2013. (AR 36.) Upon clarification, counsel acknowledged that the Title II disability insurance application would be dismissed. (AR 36.)

Plaintiff has a six-year old son who will turn seven in July. (AR 49.)

It has been several years since Plaintiff was paid to work, around 1999 or 2000. (AR 37.) Records indicate that Plaintiff received income in 2003, 2004, and 2006, but Plaintiff did not remember receiving income for those years. (AR 37.) Plaintiff is unable to work fulltime now due to his veins and his heart. (AR 37.) He has varicose veins that have popped on him several times. (AR 38.) His varicose veins swell and cause him pain in both legs every day. (AR 38.) The pain is about a seven out of ten. (AR 38.) Plaintiff takes pain medication and the pain is about a four when he is on medication. (AR 38-39.) The swelling in his legs is worse when he

walks around. (AR 39.) When his legs swell, he will lay down in bed and rest and elevate his legs. (AR 39.) He will also sit on the couch and recline. (AR 39.) Plaintiff has to elevate his legs every day of the week. (AR 40.) Sometimes he has to elevate them for three hours and somedays he has to elevate them the whole day due to pain. (AR 40-41.) He elevates his legs four times a day. (AR 41.) At times, he will have to elevate his legs for the entire day for a week. (AR 41.) He elevates his legs to waist level or a little higher. (AR 51.) In the past month, Plaintiff has had to be off his feet for the entire day six times. (AR 41.) This is usual for him. (AR 42.) In an average month, Plaintiff has to be off his feet three days. (AR 42.) Plaintiff takes medication to help the swelling. (AR 39.) Plaintiff also wears compression stockings every day. (AR 53.)

Plaintiff's heart works too fast and there are times that he has to sit down. (AR 42.) His heart will start beating really fast and he will feel faint or dizzy. (AR 42.) It happens often and was occurring during the hearing. (AR 42.) In the last week, Plaintiff had to stop what he was doing four times due to his heart beating fast and feeling dizzy or faint. (AR 42.) When this happens, he sits down and relaxes for an hour before he gets back up. (AR 42-43.) Plaintiff is able to carry on a conversation during this time. (AR 43.) He will sometimes doze off. (AR 43.) He will close his eyes and rest. (AR 43.) His doctor told him that he is unable to do any heavy lifting due to his heart condition. (AR 43.) He is also not to walk too much. (AR 44.)

Plaintiff was told that he needed to see a cardiologist and he has looked around. (AR 44.) He just found a doctor that accepts MediCal. (AR 44.) He has an appointment coming up with a cardiologist. (AR 44.) He has seen his regular doctor. (AR 44.) He had some blood work done because he broke out into hives and they are trying to see what he is allergic too. (AR 45.)

Plaintiff is able to walk for one hour. (AR 45.) His legs will start to hurt after thirty minutes and he gets tired so he will stop. (AR 45.) There are times where he has gotten a cart in a store because of his legs. (AR 45-46.) Plaintiff can lift fifteen to twenty pounds, although he could not do it consistently for four hours because it would put too much pressure on his heart. (AR 46.) Plaintiff can stand in one place for thirty minutes to an hour before he needs to sit down; then, his legs start to feel weak. (AR 46.) Plaintiff does not have any problems sitting in

one place and has no problems going up or down the stairs. (AR 46-47.)

Plaintiff is on medication for his heart, diabetes, high blood pressure, and gout. (AR 47.) He takes Lasix because of fluid retention and, if he does not take it, he will swell up and it is hard to breath. (AR 47.) The Lasix causes him to use the bathroom a lot. (AR 38.) When he takes the medication, he has to use the restroom every ten minutes and it takes him ten minutes in the restroom. (AR 47.) When he takes his medication, he uses the restroom between four to six times a day. (AR 52.) When he takes his medication the need to use the restroom hits him really quick and then it tapers off. (AR 52.) He has to take the medication every day. (AR 47.)

The medication he takes for his heart makes him tired every time he takes it. (AR 48.) He is tired from the medication every day of the week. (AR 48.) The tiredness lasts four to five hours. (AR 48.) He will lay down and fall asleep. (AR 48.) But, there are days that he is able to watch television. (AR 48.) He will catch himself falling asleep while he is watching. (AR 48.) He ends up changing the channel. (AR 49.)

Plaintiff takes medication for gout but it does not help and his legs are still painful. (AR 53.) He has pain in both legs and also has had it in his elbow. (AR 53.) He has gout flare ups more than once a month. (AR 53.) When he has a gout flare up he cannot walk. (AR 53.) It will take him more than thirty minutes to walk from his bed to the bathroom that is right next to his room. (AR 53.) Plaintiff has been taking medication for the gout since he was diagnosed more than six years ago. (AR 54.)

On a typical day, Plaintiff gets up and helps his son get ready for school. (AR 49.) He runs the water for his son's bath and picks out his clothes. (AR 49.) He feeds his son breakfast and he and his father take his son to school. (AR 49.) Sometimes he will drive and somedays his father will drive. (AR 49.) Plaintiff comes back home, has breakfast, and takes his medication. (AR 49.) He will then either go to his room and lay down or go into the living room to watch television with his parents. (AR 49.) Plaintiff helps his mom in the kitchen and sweeps. (AR 49.) His father does all the yardwork and sometimes his son helps. (AR 49.) Plaintiff does not help because of the pain in his legs. (AR 50.) Plaintiff goes grocery shopping every two weeks. (AR 50.) While shopping he will use one of the little carts or sit down and rest. (AR

50.) When he goes grocery shopping his father, mother, or son go with him because sometimes he feels dizzy. (AR 50.) Plaintiff is unable to work fulltime because of his heart, his legs, and his diabetes. (AR 50.)

Plaintiff was hospitalized last December but has not had to go back to the emergency room since then because he has been doing what they told him. (AR 54.) He had been experiencing shortness of breath and was very tired so his mom took him to the hospital. (AR 54.) They ran some tests and told him it was his heart. (AR 54.) The doctor told him there is a problem with the left side of his heart. (AR 54.) At one time, he was talking to his son and his son's mother and started feeling dizzy and his blood pressure had dropped to 60. (AR 54.) The doctor told him they wanted to put in a pacemaker but would see what the cardiologist said. (AR 55.) Plaintiff does not take any medication for his cholesterol. (AR 55.) He does take a low dose aspirin and other medications. (AR 56.) He does take medication for diabetes and because he broke out in hives. (AR 57.)

Gregory S. Jones, a vocational expert ("VE") also testified at the hearing. (AR 57-60.)

### B. ALJ Findings

The ALJ made the following findings of fact and conclusions of law. The ALJ found that Plaintiff had rebutted the previous finding that he was not disabled because Plaintiff had shown changed circumstances. (AR 19.) Therefore, the presumption of continuing nondisability did not apply. (AR 19.) At the May 16, 2016 hearing, Plaintiff withdrew his application for a period of disability and disability insurance benefits and the application was dismissed. (AR 19.) The ALJ considered Plaintiff's Title XVI application for supplemental security income. (AR 19-20.)

- Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2008.
- Plaintiff has not engaged insubstantial gainful activity since May 23, 2013, the amended alleged onset date.
- Plaintiff has the following severe impairments: chronic heart failure (i.e. mitral regurgitation) and pulmonary hypertension.
- Plaintiff does not have an impairment or combination of impairments that meets or

5

1  medically equals the severity of one of the listed impairments.

- Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR § 416.967b. Specifically, Plaintiff can lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk for up to 4 hours in an 8-hour workday; and sit for 6 hours or more in an 8-hour workday; Plaintiff would need to alternate between sitting and standing at least twice per hour.
- Plaintiff is unable to perform any past relevant work.
- Plaintiff was born on August 23, 1976, and was 36 years old which is defined as a younger individual age 18-49 on the amended alleged disability onset date.
- Plaintiff has at least a high school education and is able to communicate in English.
- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the Plaintiff is not disabled whether or not he has transferable job skills.
- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.
- Plaintiff has not been under a disability as defined in the Social Security Act from May 23, 2013, through the date of this decision.

(AR 21-27.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 416.920; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th

Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment

for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff contends that the ALJ erred by failing to provide specific clear and convincing reasons to reject his testimony. Defendant counters that the reasons provided by the ALJ to reject Plaintiff's testimony are proper and supported by the record. Plaintiff replies that the Defendant's response is merely an attempt to fill in the gaps in the ALJ's opinion.

### A. The ALJ Did Not Provide Clear and Convincing Reasons to Find Plaintiff's Testimony Not Credible

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible, requires the ALJ to engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

Then "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Brown-Hunter v. Colvin, 806 F.3d 487, 488–89 (9th Cir. 2015). "The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir.

2004) (internal punctuation and citations omitted). Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. Lingenfelter, 504 F.3d at 1040; Thomas, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . .." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284). The district court is constrained to review those reasons that the ALJ provided in finding the claimant's testimony not credible. Brown-Hunter, 806 F.3d at 492.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; but that his statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 24.) He also found that Plaintiff made inconsistent statements, and described daily activities that are not as limited as one would expect given his complaints of disabling symptoms and limitations. (AR 24.) The ALJ further found that some of the physical and mental abilities and social interactions required to perform Plaintiff's activities were the same as those necessary to obtain and maintain employment and that his participation in these activities diminished his allegations of functional limitations. (AR 24.) The ALJ noted that Plaintiff had not been compliant with his medication. (AR 24.) Finally, the ALJ found that Plaintiff has severe medical determinable impairments that would cause him to have significant functional limitations just not to the severity as alleged by Plaintiff. (AR 25.) The ALJ noted that although Plaintiff testified about the need to elevate his legs and how his diuretics cause him to use the bathroom every 10 minutes, the medical evidence does not support Plaintiff's alleged symptoms. (AR 25.) The Court shall consider whether the reasons provided

by the ALJ to discount Plaintiff's credibility are clear and convincing reasons.

1. <u>Daily Activities</u>

Plaintiff contends that the ALJ's "vague and general" statement that Plaintiff's daily activities diminishes his allegations of functional limitations is insufficient because the ALJ did not explain how his reported activities diminish his allegations. Defendant counters that the ALJ pointed out the range of daily activities that Plaintiff engages in and reasoned that some of these activities were the same as those necessary for obtaining and maintaining employment. Plaintiff replies that the generalized statements are not sufficient to meet the clear and convincing standard and the ALJ did not make specific findings as to his daily activities and their transferability to work that would warrant an adverse credibility finding.

Here, the ALJ found that Plaintiff testified that he could not work due to varicose veins in his legs and having a heart condition. (AR 23.) Plaintiff stated that he had side effects from his medication and requires use of the bathroom and has pain and swelling in his legs daily but his pain medication decreases his pain. (AR 23.) He needs to elevate his legs four times per day. (AR 23.) Plaintiff also testified that he needs to sit down often because of dizziness and faint spells. (AR 23.) Plaintiff stated that he could walk for one hour until his legs hurt, could lift 15 to 20 pounds, stand for 30 to 60 minutes, and denied problems sitting and climbing stairs. (AR 23.)

The ALJ found that Plaintiff "testified he could perform a variety of activities of daily living, such as getting his son ready for school; drive him to school; prepare his own meals; watch television; talk to his parents; help his son with his personal need and hygiene; do yard work; and shop for groceries." (AR 23.) Plaintiff stated in his exertion questionnaire that "he lives with his family and could do the following activities of daily living: shop at Wal-Mart, pick up his son, and carry his laundry. (AR 24.)

There are two grounds to use daily activities for an adverse credibility finding. <u>Orn</u>, 495 F.3d at 639. First, daily activities can form the basis of an adverse credibility determination if the claimant's activity contradicts his testimony. <u>Id.</u> The ALJ did not make finding that Plaintiff's daily activities are inconsistent with his symptom testimony, but found that some of

10

his daily activities are the same as those necessary for obtaining and maintaining employment. (AR 24.)

Daily activities may also support an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.' " Orn, 495 F.3d at 639 (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). The ALJ must make specific findings as to the daily activities and their transferability to conclude that the claimant's daily activities warrant an adverse credibility determination. Orn, 495 F.3d at 639.

Here, although the ALJ found that Plaintiff engaged in activities that were transferrable to the work setting, he did not make specific findings as to those daily activities and how they would transfer to a work setting. Further, Plaintiff testified to fairly limited daily activities and that he watched television with his parents or laid down after dropping his son off at school. Although Plaintiff stated that he helped his mother around the house, there was no testimony as to what that entailed other than sweeping. Therefore, the ALJ erred in finding that Plaintiff's daily activities diminished his credibility.

2. <u>Inconsistent Statements</u>

Plaintiff argues that the ALJ found that he made inconsistent statements but that the ALJ did not point to any inconsistent statements in the opinion. Plaintiff contends that the vague finding regarding inconsistent statements is insufficient to be found a clear and convincing reason to reject his testimony. Defendant counters that the ALJ found Plaintiff made inconsistent statements and then Defendant points to specific inconsistent statements in the record that are not cited by the ALJ in the opinion.

In evaluating the ALJ's decision, the Court is constrained to review the reasons asserted by the ALJ. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss.") As the ALJ did not specifically identify any inconsistent statements made by Plaintiff, the Court is unable to find that this is a clear and convincing reason to reject Plaintiff's credibility.

///

1       3. <u>Lack of Compliance with Treatment</u>

Defendant argues that the ALJ found that Plaintiff has not been compliant with treatment which suggests that his symptoms are not as severe as alleged. Plaintiff does not address this argument regarding his non-compliance with treatment in his reply, but argues that his credibility cannot be rejected based solely on the lack of medical evidence.

The ALJ found that when Plaintiff was admitted to the hospital for acute respiratory distress on December 16, 2015, he had not been compliant with medication. (AR 24.) In determining the credibility of a claimant's symptom testimony, the ALJ may properly rely on " 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." <u>Molina</u>, 674 F.3d at 1113.

The record for Plaintiff's hospital admission in December 2016 notes that Plaintiff "is known to have dilated cardiomyopathy since 2006. At that time, he was told of an ejection fraction of 20% over the years. With therapy the ejection fraction improved to 45%. He has been seen by a cardiologist at High Desert Health Care Systems." (AR 551.) On discharge it was noted that Plaintiff "has a past medical history significant for systolic congestive heart failure hypertension for which he has not been very complaint with his medications." (AR 542.) However, this is the only reference to non-compliance during this hospital admission and other records for this hospitalization indicate that Plaintiff has been compliant with his medication.[2] For example, on December 16, 2014, Plaintiff stated that he is taking his medication daily. (AR 531, 539, 544.) The record also notes that patient has recent onset of renal insufficiency and is likely not metabolizing the medications." (AR 537.)

Upon review of the records cited by the ALJ, the Court does not find substantial evidence to support the finding that Plaintiff was non-compliant with his medication. Therefore, this is not a clear and convincing reason to support an adverse credibility finding.

      4. <u>Lack of Objective Medical Evidence</u>

Plaintiff argues that, in finding a lack of objective medical evidence, the ALJ failed to

---

[2] The Court does note that there are references in the record to Plaintiff not taking his medication as directed. (AR 364, 604, 630.) But, the ALJ did not consider these records in the opinion.

12

1  give specific reasons and the general findings are insufficient to be clear and convincing reasons
2  to reject his symptom testimony. Defendant counters that review of the medical record generally
3  shows mild to moderate findings that do not support the alleged severity of Plaintiff's symptoms.
4  Plaintiff replies that because the ALJ failed to provide other clear and convincing reasons to
5  reject his credibility, the purported lack of objective medical evidence to support his claims is
6  insufficient to sustain the credibility finding.

7  The determination that a claimant's complaints are inconsistent with clinical evaluations
8  can satisfy the requirement of stating a clear and convincing reason for discrediting the
9  claimant's testimony. Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297
10 9th Cir. 1999). "While subjective pain testimony cannot be rejected on the sole ground that it is
11 not fully corroborated by objective medical evidence, the medical evidence is still a relevant
12 factor in determining the severity of the claimant's pain and its disabling effects." Rollins v.
13 Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

14 Here, as previously discussed, the other reasons provided by the ALJ to reject Plaintiff's
15 symptom testimony were not clear and convincing. Therefore, the lack of objective evidence is
16 not by itself sufficient to support the adverse credibility finding. Accordingly, the ALJ erred by
17 failing to provide specific clear and convincing reasons to discount Plaintiff's symptom
18 testimony.

19 **B.    Remand for Further Proceedings**

20 Plaintiff seeks to have his testimony credited as true and to remand for payment of
21 benefits, or in the alternative, to remand for further proceedings. Defendant argues that remand
22 for payment of benefits is not appropriate in this case as Plaintiff has not challenged the
23 evaluation of the medical evidence and the residual functional capacity assessment. Since
24 Plaintiff cannot be awarded benefits solely on his testimony, Defendant argues that a remand for
25 benefits would be inappropriate.

26 The Ninth Circuit has "devised a three-part credit-as-true standard, each part of which
27 must be satisfied in order for a court to remand to an ALJ with instructions to calculate and
28 award benefits: (1) the record has been fully developed and further administrative proceedings

13

would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). The credit as true doctrine allows "flexibility" which "is properly understood as requiring courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled. Garrison, 759 F.3d at 1021. Further, "a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony." Brown-Hunter, 806 F.3d at 495 (quoting Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1106 (9th Cir. 2014)).

Here, the Court finds that the action should be remanded for further proceedings. Specifically, the ALJ considered the history of Plaintiff's heart condition and found that in June 28, 2016, Plaintiff had an ejection fraction ("EF") of 45 percent and that while "a normal ejection fraction is between 50% to 70%. . . an EF from 41% to 49% may be considered borderline but does not always indicate that a person is developing heart failure. It may indicate damage perhaps from a previous heart attack." (AR 24.) The ALJ found that although Plaintiff's EF is low Plaintiff can perform less than full range of light exertional level and that it was worth noting that given Plaintiff's "comparatively young age even a limitation to sedentary work would not necessarily result in a finding of disability." (AR 25.) Further, as the ALJ noted, although Plaintiff alleges that he has severe pain in his legs and gout flares that required him to elevate his legs, the medical record does not support these alleged symptoms. (AR 25.) Finally, as noted by Defendant, Plaintiff has made conflicting statements regarding his symptoms. (AR 45, 47, 49, 50, 249.)

It is not clear on this record that Plaintiff is in fact disabled. Accordingly, the matter is remanded for the ALJ to further consider Plaintiff's testimony.

///

///

14

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ erred in failing to provide specific clear and convincing reasons to reject Plaintiff's symptom testimony. Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED and this matter is remanded back to the Commissioner of Social Security for further proceedings consistent with this order. It is FURTHER ORDERED that judgment be entered in favor of Plaintiff Jesus Garcia and against Defendant Commissioner of Social Security. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: __**January 3, 2019**__

UNITED STATES MAGISTRATE JUDGE